**George McMILLAN, Plaintiff,**

v.

**T. HEALEY, Correction Lieutenant, Defendant.**

**No. 88 Civ. 8370 (RPP).**

United States District Court, S.D. New York.

May 21, 1990.

---

Robert Abrams, Atty. Gen. of the State of N.Y., Stephen M. Jacoby, New York City, for defendant.

George McMillan, pro se.

## OPINION AND ORDER

ROBERT P. PATTERSON, Jr., District Judge.

George McMillan, plaintiff *pro se,* is an inmate confined to Fishkill Correctional Facility. He brings this action pursuant to 42 U.S.C. § 1983, claiming that defendant Healey, a corrections officer at Fishkill, violated his right to due process under the Fourteenth Amendment to the United States Constitution. Defendant moves to dismiss the complaint pursuant to Fed.R. Civ.P. 12(b)(6), 12(b)(1) and 12(h), or for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c).

The factual allegations of Plaintiff's complaint are as follows:

On October 31, 1988, a misbehavior report was written against the plaintiff, the contents of said report was reviewed by the defendant, in a hearing conducted on November 3, 1988.

The plaintiff was found guilty of the charges in the written report, and was sentenced to 10 days confinement in the Special Housing Unit. The defendant knew or should have known, that he did not have the authority to sentence the plaintiff to the Special Housing Unit, because the degree of the misbehavior report did not encompass such penalty, which such penalty could only have been imposed by an official of higher authority than the defendant, after conducting a specifically indicated hearing necessary for properly imposing the penalty to a Special Housing Unit.

Defendant, reading the complaint as alleging that defendant was without statutory authority to punish plaintiff by putting him in a Special Housing Unit ("SHU"), moved to dismiss or for judgment on the pleadings, arguing, *inter alia*, that New York law is clear that a Tier II hearing officer conducting a Tier II disciplinary hearing does have such authority.[1] In his opposition to defendant's motion, plaintiff implicitly acknowledges that defendant did have the statutory authority to place plaintiff in an SHU, but argues that his due process rights were violated because defendant violated New York Correction Law § 138,[2] which prohibits the imposition of punishment for violation of a rule or regulation of which the inmate has not been provided a copy. In his brief, plaintiff claims that the Standards of Inmate Behavior ("Rule Book") distributed to him pursuant to Correction Law § 138 implied that confinement to an SHU was not among the possible penalties for a Tier II violation.[3] Thus, plaintiff claims that, since he was not made aware that confinement to an SHU was possible, under § 138(5) defendant could not so discipline him, and was without power to do so, as alleged in the complaint.

■ However, establishing a violation of a state procedural law does not by itself establish a violation of the Due Process Clause of the Constitution. "Although local rules may offer greater procedural protection than the Constitution requires, such rules do not act 'as a ratchet tightening the Due Process Clause. Any such state procedural requirements remain only that, not independently cognizable in a Section 1983 lawsuit.'" *Panozzo v. Rhoads*, 711 F.Supp. 941, 944 (N.D.Ill.1989), quoting *Jones v. Board of Education*, 651 F.Supp. 760, 766 (N.D.Ill.1986). *See also Cleveland*

---

1. Although it is not alleged in the complaint, both parties appear to agree that plaintiff's misconduct was of the "Tier II" variety under New York law.

2. New York Corrections Law § 138 provides, in relevant part:
   1. All institutional rules and regulations defining and prohibiting inmates misconduct shall be published and posted in prominent locations within the institution and set forth in both the English and Spanish language.
   2. All inmates shall be provided with written copies of these rules and regulations upon admission to the institution and all inmates presently incarcerated in a correctional facility shall be provided with written copies of the rules and regulations.
   3. Facility rules shall be specific and precise giving all inmates actual notice of the conduct prohibited. Facility rules shall state the range of disciplinary sanctions which can be imposed for violation of each rule.
   * * * * * *
   5. No inmate shall be disciplined except for a violation of a published and posted written

rule or regulation, a copy of which has been provided the inmate.

3. The Rule Book given to plaintiff at Fishkill reprints 7 N.Y.C.R.R. Ch. V under the heading "Range of Penalties." It lists as a penalty for a Tier II violation "Confinement to a cell or room continuously, on certain days, or during certain hours for a period of up to 40 days," whereas for a Tier III violation, the penalties listed include "Confinement to cell or room, *or in a Special Housing Unit* continuously, on certain days, or during certain hours for a specified period" (emphasis added).

7 N.Y.C.R.R. § 301.6(a)(2), which apparently was a recent amendment to the N.Y.C.R.R. at the time of plaintiff's misconduct, indicates that confinement to an SHU is a proper sanction for a Tier II violation.

*Board of Education v. Loudermill,* 470 U.S. 532, 541, 105 S.Ct. 1487, 1492–93, 84 L.Ed.2d 494 (1985) ("once it is determined that the Due Process Clause applies, 'the question remains what process is due.' [citation omitted]. The answer to that question is not to be found in the [state] statute."). Thus, while defendant may have been deprived of a protected liberty interest by being placed involuntarily in the SHU, *see Matiyn v. Henderson,* 841 F.2d 31, 36 (2d Cir.), *cert. denied,* 487 U.S. 1220, 108 S.Ct. 2876, 101 L.Ed.2d 911 (1988); *Sher v. Coughlin,* 739 F.2d 77 (2d Cir. 1984), this Court's role under § 1983 is only to enforce the procedural protections guaranteed by federal constitutional law. Failure to follow state procedures does not by itself deprive an inmate of the process due him under the Fourteenth Amendment, and therefore does not alone create a federal claim. Accordingly, the issue to be decided in the case at hand is whether the Due Process Clause proscribes punishment of inmates for misconduct unless they have previously been put on notice of the range of disciplinary sanctions that can be imposed on them.

The Court discerns two separate issues here: (1) whether an inmate who was not notified of the range of disciplinary sanctions penalties *before* he engaged in misconduct may be disciplined, and (2), if not, whether an inmate who was not so notified at the time he was notified of the charges against him may be disciplined for the charged misconduct. The Court concludes that notice of the penalty prior to being charged with any misconduct is not required, but due process does require that, when the inmate is notified of the charges against him, he must also be notified of the range of sanctions that may be imposed if discipline is warranted.

*1. Notice Prior to Infraction*

■ Plaintiff has cited no authority for the proposition that the Due Process Clause prohibits the imposition of punish-

ment upon an inmate unless the inmate was made aware of the potential penalties prior to the charged misconduct. The Court has found two cases that so hold, *Sinclair v. Henderson,* 331 F.Supp. 1123, 1129 (E.D.La.1971) and *Gates v. Collier,* 349 F.Supp. 881 (N.D.Miss.1972), *aff'd,* 489 F.2d 298 (5th Cir.1973),[4] but they are of limited persuasive value because both were decided before the Supreme Court, in *Wolff v. McDonnell,* 418 U.S. 539, 567, 94 S.Ct. 2963, 2980, 41 L.Ed.2d 935 (1974), laid down the minimum requirements of due process in the inmate disciplinary context. In *Wolff,* the Court held that an inmate subject to disciplinary action must be given (1) advance written notice of the charges against him, (2) a written statement by the factfinders of the evidence relied on and the reasons for the disciplinary action taken, and (3) the opportunity to present evidence in his defense if permitting him to do so will not jeopardize institutional safety or correctional goals. The Court has found no cases subsequent to *Wolff* holding that due process requires notice of the range of disciplinary sanctions prior to commission of the infraction.

■ Furthermore, application of the appropriate standard convinces the Court that such notice is not required. To determine the procedural protections required by the Due Process Clause, the Court must weigh the private interests at stake in a governmental decision, the governmental interests involved, and the value of the procedural requirements. *Washington v. Harper,* — U.S. ——, 110 S.Ct. 1028, 1040–41, 108 L.Ed.2d 178 (1990); *Hewitt v. Helms,* 459 U.S. 460, 473, 103 S.Ct. 864, 872, 74 L.Ed.2d 675 (1983). Weighing these factors in the present case, the Court holds that, since plaintiff was aware that the misconduct charged was subject to disciplinary sanction, notice of the exact range of those sanctions prior to commission of the infraction is not required in these circumstances.

---

**4.** *See also Battle v. Anderson,* 376 F.Supp. 402, 421 (E.D.Okla.1974) ("The due process clause proscribes any serious disciplinary sanctions against an inmate unless he is found to have violated written rules which are adequately promulgated prior to the commission of the infraction charged and which describe punishable conduct with reasonable precision.").

■ The Court recognizes that plaintiff's private interest at stake here is not insubstantial. It involves solitary confinement and the stigma of wrongdoing that attaches to disciplinary confinement. *Cf. Hewitt v. Helms*, 459 U.S. at 473, 103 S.Ct. at 872. Also, there is little government interest, other than avoidance of expense, in not notifying inmates of the range of sanctions available for misconduct. Nevertheless, it is difficult to see any value in the procedural requirement plaintiff suggests. In this case, notice of the specific penalty that could be imposed if an infraction is committed would do very little to further the interests protected by due process: fairness and accuracy in government decision-making. *See Wolff*, 418 U.S. at 558, 94 S.Ct. at 2976 ("The touchstone of due process is protection of the individual against arbitrary action of the government[.]"). While ensuring that inmates know that the exact range of disciplinary sanctions which may attach to violation of prison rules and regulations may, in fact, further the goal of maintaining order in the prison setting, it would not appear to affect the fairness or accuracy of the government's disciplinary decision. Therefore, the Due Process Clause did not prohibit defendant from taking disciplinary action against plaintiff due to the fact that the Rule Book did not notify plaintiff of the potential penalty of confinement to an SHU.

### 2. Notice Subsequent to Being Charged

■ The above analysis changes significantly after the inmate has been charged with misconduct. His private interest, of course, remains the same. The government's interest in not informing the inmate of the potential penalty, minimal to begin with, virtually disappears, since significant expense is not involved. At this stage, however, the procedural value of notice of the range of disciplinary sanctions is substantially greater. First, the nature and severity of the potential penalty may affect the extent to which the inmate will defend himself from the charges. Quite obviously, if the potential penalties are great, the inmate may choose to marshal more evidence for his defense than if the potential penalty is minimal. Similarly, witnesses with exculpatory information might be more likely to come forward and testify if they are aware that the inmate might receive a substantial penalty.[5]

Second, notice of the penalty is necessary prior to the disciplinary hearing in order to allow the defendant to argue the appropriateness of a given penalty within the range of available sanctions. In the present case, for example, the inmate may have specific reasons for why he believes confinement in an SHU was unwarranted. If the Rule Book in the inmate's possession indicates that such confinement is not one of the penalties to which he might be subjected, he will not raise those points. Hence giving notice of the potential penalty to an inmate has significant value in ensuring the fairness and accuracy of the disciplinary decision.

■ In light of the significant private interests of plaintiff at stake, the lack of government interest in not providing it, and the substantial procedural value that may have resulted, the Court holds that failure to notify an inmate, after he has been charged with misconduct, of the potential penalties that could be imposed for that misconduct, is violative of the Due Process Clause of the Fourteenth Amendment. Therefore plaintiff has stated a claim upon which relief may be granted under § 1983.

### 3. Defendant's Immunity

Defendant's answer to the complaint asserts as an affirmative defense that he is qualifiedly immune from liability, and if it is clear that his immunity bars plaintiff's suit, judgment on the pleadings pursuant to Rule 12(c) is appropriate.

■ State officials are immune from

---

**5.** The Court takes judicial notice of the fact that confinement to an SHU constitutes a substantial sanction for a prisoner.

suits for damages [6] alleging constitutional violations if it was not clearly established at the time of their acts that the interest asserted by the plaintiff was a protected one, or if it was objectively reasonable for the officials to believe that their acts did not violate clearly established statutory or constitutional rights. *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *Anderson v. Creighton,* 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). *See also Gittens v. Lefevre,* 891 F.2d 38, 39, 42 (2d Cir.1989); *Robison v. Via,* 821 F.2d 913, 920–21 (2d Cir.1987). The Court's holding above that an inmate is entitled to notice of the range of disciplinary sanctions applicable to the misconduct with which he is charged is apparently the first such holding since the Supreme Court decided *Wolff v. McDonnell.* Thus, the right plaintiff asserts to notice of the potential penalties for a charged infraction was not clearly established at the time defendant acted, and it was objectively reasonable for the defendant to believe that he was not violating plaintiff's rights by confining him to an SHU in accordance with state law.

■ Furthermore, to the extent plaintiff is suing defendant for damages in his official capacity, the suit is barred by the Eleventh Amendment. *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974).

For the foregoing reasons, plaintiff's complaint fails to state a cause of action upon which relief can be granted. Accordingly, defendant's motion to dismiss the complaint is granted.

SO ORDERED.

---

**6.** Qualified immunity under § 1983 only protects defendants from liability, not from injunctive relief. Here plaintiff seeks injunctive relief "against the unauthorized confinement of inmates to the Special Housing Unit." There is no basis for such an order here, and plaintiff is without standing to seek such injunctive relief.